### JANUARY TERM, 1862.

---

## ANTONIO MATIAS ORTIZ v. JESUS MARIA BACA Y SALAZAR.

PRESCRIPTION ORDINARY AND EXTRAORDINARY UNDER SPANISH LAW.—Prescription under the Spanish civil law is of two kinds, ordinary and extraordinary; the former, which extends only to ten years, applies only where property was acquired in good faith and by a just title, and does not run upon a contract with an insane person or minor; the latter extends to thirty years, requires neither good faith nor just title, and includes contracts between minors and those bearing the relation of tutors to them.

EXTRAORDINARY PRESCRIPTION BETWEEN MINOR AND TUTOR.—To a suit upon a document executed in New Mexico in 1823 by the mother and step-father of an infant three years of age, acknowledging the receipt of money belonging to such infant and coming into their hands as his tutors, and promising to pay it over without interest on his coming of age, only the extraordinary prescription of thirty years, under the Spanish law then prevailing, can be pleaded, and such period begins to run only after the infant has attained the age of twenty-five.

INFANT ENTITLED TO INTEREST IN SUCH CASE.—In a suit against the tutor to recover money so received, the former infant is entitled to legal interest thereon from the time of attaining his majority.

APPEAL from the district court of Santa Fe county. The case appears from the opinion.

*M. Ashurst,* for the appellant.

*T. D. Wheaton,* for the appellee.

By Court, BENEDICT, C. J.:

· On the fifth day of August, 1856, Baca y Salazar filed his petition in the clerk's office of the district court, for the district and county of Santa Fe. The cause was tried by a jury, at the March term, 1858, and appealed by Ortiz to this court. The suit was founded on a document in Spanish, made in 1823. This was filed with the petition and made part thereof. It appears that when the instrument was made, the plaintiff in this suit was of very tender years, being then only about three years of age. His mother, Rosa Salazar, had been a widow, but had intermarried with the defendant, and she and the defendant had become the tutors, under the Spanish law, of the infant child. The instrument was made by the mother, Rosa, and Ortiz. They acknowledged that the minor, Jesus Maria, was entitled to an inheritance in the sum of three hundred and seven dollars and fifty cents, which had been in the hands of Don Juan Esteban Pino, and by them received of him in the capacity of tutors for the minor. They admitted that the sum of money belonged to the minor and might·be used by him. They, however, stated that they had agreed between themselves and Don Juan Esteban, that the said sum should remain in the hands of the said Rosa and Antonio Matias, without any interest in the capacity of tutors, until the said Jesus Maria should be in a condition to receive it. The petition avers that the time when he became in a condition to receive it was when he arrived at the full age of twenty-one years, which occurred upon the first day of May, 1841.

The document then contains the strongest pledges, promises, and agreements to pay to the said Jesus Maria the said sum when he should be in the condition to receive it, binding their persons and property in the solemn and formal manner peculiar to the making of instruments in those days. They bound themselves to keep the said sum entire and without diminution. The document was made and authenticated in the presence of an alcalde, and the acting secretary of the then corporation of Santa Fe.

In the district court the defendant pleaded four pleas, among which was that of limitation or prescription to the action, that it did not come within ten years next preceding the commencement of the suit. To this plea the plaintiff demurred, and the court sustained the demurrer. A trial was afterwards had by a jury, and a verdict was found for the sum of three hundred and seven dollars and fifty cents, the sum specified in the instrument. Motions for new trial, and in arrest of judgment were made, which were overruled by the court, and judgment rendered upon the verdict. The defendant did not, in a bill of exceptions, bring all the evidence into this court, but the instrument is here in the original, and also copied as a a part of the record. The error assigned, to which the examination of the court is called, is the judgment sustaining the demurrer to the plea of prescription to the action. The merits of the defense set up in this plea must now be considered. This involves an examination of the civil laws in force in New Mexico at the time the money in question was received by the trustees. It is proper to remark here, that Rosa Salazar was deceased when this suit was instituted.

By the civil and Spanish law, "he who prescribes an action does not acquire any right over another, nor on the property of another; he only liberates himself from an obligation due to some other person. In order to be entitled to prescribe, three essential elements must exist. Two of these are good faith and just title."

There are ordinary prescriptions and extraordinary prescriptions. Where the elements referred to combine, a defendant may avail himself in his behalf in an action against him for the recovery of money, by ordinary prescription, after ten years from the time the right of action begins to run. To prescribe by "ordinary prescription, it is necessary that the contract by which the property was acquired be a valid contract. Hence, a thing acquired by purchase, donation, or any other contract made with an insane person, can not be acquired by prescription, nor property obtained from a minor, or in any other mode which

the law holds invalid; but even in such cases the prescription of thirty years applies."

The extraordinary prescription extends to thirty years, and includes minors bearing the relation that did the plaintiff to his tutors. It begins to run, in such cases, when the minor arrives at twenty-five years of age. "The extraordinary prescription requires neither title nor good faith."

It is the duty of tutors to "collect sums due to the minor, requiring the debtors to pay when they ought, because if the tutors neglect to do so, they become themselves responsible. They are also bound to invest the funds of the minor where they may draw interest, or to employ them in some other manner by which they are made productive."

For the correctness of these positions reference is here made to Escriche, Las Partidas, Las Pandectas, Justinian, Febrero, Schmidt's Civil Law of Spain and Mexico, and to the Nuevo Recopilacion, by White. These show that the defendant was not entitled to the defense he interposed, and that the demurrer was justly sustained. Did not these authorities show so conclusively that the defendant would not be in a position for which he could plead prescription against the plaintiff until the "extraordinary" period of thirty years should run in his favor, still, there is one element disclosed in this cause which would operate to the exclusion of his plea, and this is a want of good faith. A good title he had to the possession of the money when he acquired it, yet he knew it was not his. He knew it belonged to the plaintiff, and that he was bound to administer it for him, and account to him for it, when he should pass his minority. He stood in a fiduciary capacity. The money was a trust in his hands. The moment the plaintiff passed his minority it was the duty of the defendant to account and pay over to him the money with lawful accumulations. This good faith demanded. This he failed to do, and the payment to this day has been withheld in bad faith, and the defendant had no just right to come into court and oppose his own bad faith as a defense against the righteous claim of the plaintiff.

This case presents one particular feature not calculated

to woo to itself favor in an enlightened court of justice. When a tutor, under the law, to a child about three years old, the defendant sat coolly down and received the child's money, and procured, as he thought, an arrangement by which he could use it about twenty years as his own, without any liability to increase it for the minor, by investment or paying interest for the use. Every informed lawyer knows that the minor was not bound by the agreement, and that the defendant was liable to him for principal and interest from the time the money was received.

One other consideration remains. The plaintiff is clearly entitled to interest in this action from the time in 1841 at which it is alleged he came of age. This interest the jury omitted to include in their verdict. It is evident that they found the sum specified in the document, and upon its face as testimony.

The statute provides that the supreme court, in appeals or writs of error, shall examine the record and the facts therein contained alone, shall award a new trial, reverse or affirm the judgment of the district courts, or give such other judgment as to them seem agreeable to law.

From this it seems clear there can be no difficulty in pronouncing in this court the judgment the plaintiff merits. Taking the instrument and the judgment below as a basis, what the plaintiff is entitled to in this action is easily ascertained by computation. To send the case back would work delay and costs. This court, therefore, being able to do substantial justice, we think it should be at once determined.

The judgment of the court below must be affirmed, with an additional sum for interest on the plaintiff's claim set out in his petition, from the first day of May, 1841, at the rate of six per cent. per annum, amounting to three hundred and seventy-two dollars, which sum added to the judgment in the record, makes the sum of six hundred and seventy-nine dollars and fifty-six cents.

Judgment for the appellee for that sum and costs. The appellant having died since this appeal was taken, and his executors having entered their appearence in this court as his legal representatives, judgment must be against them, and the securities upon the appeal bond.